# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

INLAND TRAILER HOLDINGS, LLC,

    Plaintiff,

v.

TMI TRAILER MECHANIC INTERNATIONAL, S.A. DE C.V.,

    Defendant.

Case No. 2:25-cv-11688

Hon. Robert J. White

---

KIENBAUM, HARDY, VIVIANO,
PELTON & FORREST, P.L.C.
By:  Eric J. Pelton (P40635)
      Joseph E. Viviano (P60378)
      Thomas J. Davis (P78626)
280 N. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
jviviano@khvpf.com
tdavis@khvpf.com

*Attorneys for Plaintiff*

---

## Amended Complaint

Plaintiff Inland Trailer Holdings, LLC ("Inland")[1] states as follows for its Amended Complaint against Defendant TMI Trailer Mechanic International, S.A. de C.V. ("TMI"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Inland is a Michigan limited liability company organized under the laws of the State of Michigan, with the principal place of business located in Warren, Macomb County, Michigan. Inland's sole member is a Michigan trust whose trustee is a Michigan resident.

2. Defendant TMI is a Mexican *Sociedad Anónima de Capital Variable* ("Open-End Stock Company" in English, abbreviated as "S.A. de C.V."). An S.A. de C.V. is substantially similar in form to a United States corporation, and is treated as a corporation for diversity jurisdiction purposes in U.S. courts. TMI is organized under the laws of Mexico and has its principal place of business in Mexico.

3. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332, as the matter in controversy between the parties exceeds $75,000 and is between a citizen of a State and a citizen of a foreign state.

---

[1] This Amended Complaint is being filed to correct an inadvertent misnomer in the Plaintiff's legal name, which is "Inland Trailer Holdings, LLC." Otherwise, this Amended Complaint is substantively identical to the original Complaint.

4. This Court has personal jurisdiction over TMI as the contract under which this suit arises has a forum selection clause stating that the "parties agree that the jurisdiction and venue for any dispute related to this Agreement will be the U.S. Federal District Court for the Eastern District of Michigan" and that the "parties agree to submit themselves to the exclusive jurisdiction of the court chosen by plaintiff." *See* Exhibit 1 ¶ 10.8.

5. This Court is the appropriate venue for this action, both because TMI has consented to venue in this Court, and under 28 U.S.C. § 1391, because this is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Among other things, the injuries that TMI has caused and is continuing to cause will be sustained in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

6. TMI is in the business of manufacturing, assembling, repairing, and selling different types of industrial trailers and semitrailers.

7. Inland is a holding company that is a 51% owner and member of Inland Trailer, S. de R.L. de C.V. ("Trailer"). Trailer is a Mexican *Sociedad de Responsabilidad Limitada de Capital Variable* ("Limited Liability Variable Stock Corporation" in English), which is a form of Mexican LLC.

8. TMI is a 49% owner and the other member of Trailer.

2

9. Trailer was formed with the purpose of, among other things, increasing TMI's capacity to manufacture, assemble, repair, and sell trailers and semitrailers for the benefit of Trailer's members.

10. Inland's and TMI's rights and obligations related to Trailer are governed by a Member Agreement (the "Contract"), attached to this Amended Complaint as Exhibit 1.

11. The Effective Date of the Contract was March 1, 2022.

12. Section 4.2 of the Contract states that beginning on the Contract's third anniversary, Inland had an option to purchase TMI's membership share in Trailer.

13. Section 4.2 states that, if the option is exercised, TMI is required to select one of the "big four" international accounting firms to value TMI's membership share.

14. Section 4.2 further specifies that the "big four" international accounting firm was required to determine the "fair market value" of TMI's membership share in good faith and "using similar transactions of market or industry," which is a market valuation approach. As the language of the Contract indicates, a market-value approach looks to comparable existing sales and attempts to determine what the market would pay for a similar company as it currently exists.

15. On March 4, 2025, Inland notified TMI that it would be exercising its option to buy TMI's membership share in Trailer.

3

16. Inland anticipated that a fair market value of TMI's membership Trailer under the market valuation method would be negligible because Trailer was heavily in debt ($11 million dollars of which was owed to Inland itself).

17. Upon learning of the notice, Rodrigo Soto Pesquera—TMI's president and one of the Board Members of Trailer—reached out to Deloitte Mexico, without providing notice to Inland or the other Board members of Trailer, to begin a valuation of TMI's membership share in Trailer.

18. Although Deloitte Mexico's engagement should have been with both Inland and TMI (*i.e.*, the two existing members of Trailer), Mr. Soto purported to enter into the engagement on behalf of Trailer itself.

19. Mr. Soto did not provide Deloitte Mexico with a copy of the Contract or the binding provision of that Contract governing the valuation, and he did not tell Deloitte Mexico that the Contract required Deloitte to value TMI's membership share in Trailer using a market valuation approach.

20. Instead, Mr. Soto instructed Deloitte Mexico to use a discounted cash flow analysis. Unlike a market valuation approach (which looks to comparable sales of businesses in the current marketplace), a discounted cash flow analysis attempts to value a company based on that company's own projections of its future cash flow.

21. Mr. Soto provided Deloitte Mexico inexplicably high and wholly insupportable projections of Trailer's future revenue and profit margins. For

4

instance, he claimed that Trailer would have a 25% profit margin in the future, despite having only an 8% profit margin historically. He provided these overinflated projections of future profitability to obtain a significantly inflated valuation for TMI's membership share in Trailer.

22. In April 2025, Inland learned that Mr. Soto had instructed Deloitte Mexico to begin valuing TMI's membership interest in Trailer, and of the erroneous data he had provided Deloitte Mexico in an effort to overvalue Trailer. Inland objected to the use of this data in the valuation process. It was not, however, aware that Deloitte Mexico did not have the parties' Contract or that Deloitte Mexico would not be performing a market valuation approach called for in that Contract.

23. Deloitte Mexico initially represented—consistent with best practices—that it would not provide a valuation due to the dispute between the two members of Trailer.

24. Mr. Soto then falsely represented to Deloitte Mexico that as the President of Trailer, he was authorized to direct Deloitte Mexico to complete and issue the valuation, which did not comport with the methodology required by the Contract and which included bad-faith, unsupportable, and self-serving projections and data supplied by Mr. Soto.

5

25. Deloitte Mexico inexplicably did so, despite best practices and inconsistent with its duty of care, providing a wildly overinflated value of $14,000,000 for Trailer.

26. On June 3, 2024, representatives of Inland held a meeting with Mr. Soto's lawyer and Pablo Castillo, the accountant from Deloitte Mexico who performed the appraisal. During the meeting, Mr. Castillo confirmed that he was never provided with a copy of the Contract or its relevant provisions, did not know that the Contract required him to value TMI's membership share using a market valuation method (and not a discounted cash flow method), and that his $14,000,000 valuation of Trailer was not a market valuation approach.

27. With full knowledge that Deloitte Mexico's valuation was unauthorized, was prepared using a contractually-forbidden methodology, and was based on inflated projections and incorrect data provided by Mr. Soto, TMI has demanded that Inland immediately purchase its 49% membership share using the improper Deloitte Mexico valuation.

28. Under a proper valuation and in light of Trailer's significant debt, Inland would be entitled to purchase TMI's membership interest in Trailer for a negligible sum at most, and for many millions of dollars less than what TMI is demanding based on Deloitte Mexico's improper valuation.

## **COUNT ONE: BREACH OF CONTRACT**

29. Inland incorporates the foregoing allegations.

30. Inland and TMI have a binding contract that permits Inland the option to buy TMI's membership share in Trailer.

31. That contract further provides that the value of TMI's membership share must be performed using a market valuation approach.

32. TMI breached the contract as set forth herein, including without limitation by: (a) directing Deloitte Mexico to use a valuation method that was not permitted by the parties' contract; (b) overinflating, in bad faith, the valuation of TMI's membership share by millions of dollars; and (c) refusing to allow Inland to exercise its option at a value based on the contractually-required market valuation method.

33. The parties' contract states that upon breach, a party "will have the right to seek and to have the specific performance of this Agreement." Ex. 1 ¶ 10.5.

34. The parties' contract further states that in "the event of a dispute concerning the enforcement or interpretation of this Agreement, the prevailing party… will be entitled to recover … reasonable attorneys' fees and other reasonable and documented costs and expenses incurred by the prevailing party." *Id.*

35. Inland has further been forced to incur costs and attorneys' fees, and continues to incur costs and attorneys' fees, related to TMI's failure to comply with its contractual obligations.

**WHEREFORE**, Plaintiff Inland requests that the Court (1) enter judgment in its favor; (2) permanently enjoin TMI from relying on the existing Deloitte valuation in calculating the price Inland must pay to purchase TMI's membership share; (3) specifically enforce the terms of the contract, including requiring TMI to obtain. jointly with Inland, a new valuation from one of the "big four" accounting firms using the contractually-required market valuation approach; and (4) award Inland costs, attorneys' fees, and such further relief as the Court deems just and equitable.

## COUNT TWO: DECLARATORY JUDGMENT

36. Inland incorporates the foregoing allegations.

37. Under 28 U.S.C. § 2201, a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," with such declaration having the force and effect of a final judgment.

38. The legal rights or obligations in question in this matter include the interpretation of the parties' contract, including the methodology that must be used in determining the fair market value of TMI's valuation.

39. Inland seeks a declaratory judgment under § 2201, declaring that:

8

    a. TMI's current valuation as performed by Deloitte Mexico violates the parties' contract and may not be used as a basis for the membership interest's valuation;

    b. TMI must, jointly with Inland, have Deloitte Mexico or one of the other "big four" accounting firms provide a new valuation using the market valuation approach as required by the parties' contract; and

    c. TMI is required to sell its membership share to Inland at that market valuation, as required by the parties' contract.

40. Inland further prays that upon making such a declaration that the Court will grant Inland's request for injunctive relief and specific performance of the contract; namely, requiring TMI to perform all steps necessary to properly value and sell its membership share to Inland based on that valuation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Inland requests that the Court enter judgment in its favor and against Defendant TMI, and further requests that the Court:

    A.    Issue the declaratory judgment as specified above.

    B.    Issue preliminary and/or permanent injunctive relief requiring TMI to perform all steps necessary to properly value and sell its membership share to Inland based on that proper valuation.

  C. Award Inland damages in excess of $75,000, in an amount sufficient to fully compensate it for all losses suffered as a result of the actions of TMI described in this Amended Complaint, including forcing Inland to incur costs and attorneys' fees related to TMI's failure to comply with its contractual obligations; and

  D. Award Inland such additional further relief as the Court may deem just.

         Respectfully submitted,

         KIENBAUM HARDY VIVIANO
         PELTON & FORREST, PLC

         By: */s/Thomas J. Davis*
          Eric J. Pelton (P40635)
          Joseph E. Viviano (P60378)
          Thomas J. Davis (P78626)
         280 N. Old Woodward Ave., Ste. 400
         Birmingham, MI 48009
         (248) 645-0000
         epelton@khvpf.com
         jviviano@khvpf.com
         tdavis@khvpf.com

June 6, 2025
571808