## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

INLAND TRAILER HOLDINGS, LLC,

      Plaintiff/Counter-Defendant,      Case No.  2:25-cv-11688

vs.

      Hon. Robert J. White

TMI TRAILER MECHANIC
INTERNATIONAL, S.A. DE C.V.,

      Defendant/Counter-Plaintiff.

| | |
|---|---|
| Eric J. Pelton (P40635) | D. Andrew Portinga (P55804) |
| Joseph E. Viviano (P60378) | Amanda L. Rauh-Bieri (P83615) |
| Thomas J. Davis (P78626) | MILLER JOHNSON |
| KIENBAUM, HARDY, VIVIANO, PELTON & FOREST, P.L.C. | *Attorneys for Defendant* |
| *Attorneys for Plaintiff* | 45 Ottawa Ave. Suite 1100 |
| 280 N. Old Woodward Ave. Suite 400 | Grand Rapids, MI  49503 |
| Birmingham, MI  48009 | (616) 831-1800 |
| (248) 645-0000 | portingaa@millerjohnson.com |
| epelton@khvpf.com | rauhbieria@millerjohnson.com |
| jviviano@khvpf.com | |
| tdavis@khvpf.com | |

## TMI Trailer Mechanic International, S.A. de C.V.'s Answer, Affirmative Defenses, and Counterclaim

TMI Trailer Mechanic International, S.A. de C.V. ("TMI"), answers Inland Trailer Holdings, LLC's ("Inland"), amended complaint as follows:

## Parties, Jurisdiction, and Venue

1.     Plaintiff Inland is a Michigan limited liability company organized under the laws of the State of Michigan, with the principal place of business located in Warren, Macomb County, Michigan. Inland's sole member is a Michigan trust whose trustee is a Michigan resident.

**ANSWER: TMI lacks knowledge or information sufficient to form a belief as to the truth of the assertions in this paragraph.**

2.     Defendant TMI is a Mexican Sociedad Anónima de Capital Variable ("Open-End Stock Company" in English, abbreviated as "S.A. de C.V."). An S.A. de C.V. is substantially similar in form to a United States corporation, and is treated as a corporation for diversity jurisdiction purposes in U.S. courts. TMI is organized under the laws of Mexico and has its principal place of business in Mexico.

**ANSWER: Admitted, except that the more accurate translation of "Sociedad Anónima de Capital Variable" is a variable capital corporation.**

3.     This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332, as the matter in controversy between the parties exceeds $75,000 and is between a citizen of a State and a citizen of a foreign state.

**ANSWER:  Admitted.**

4.   This Court has personal jurisdiction over TMI as the contract under which this suit arises has a forum selection clause stating that the "parties agree that the jurisdiction and venue for any dispute related to this Agreement will be the U.S. Federal District Court for the Eastern District of Michigan" and that the "parties agree to submit themselves to the exclusive jurisdiction of the court chosen by plaintiff." See Exhibit 1 ¶ 10.8.

**ANSWER: The agreement attached as Exhibit 1 to Inland's amended complaint speaks for itself.  TMI denies any allegation inconsistent with the terms of that agreement.  By way of further answer, TMI does not contest personal jurisdiction.**

5.   This Court is the appropriate venue for this action, both because TMI has consented to venue in this Court, and under 28 U.S.C. § 1391, because this is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Among other things, the injuries that TMI has caused and is continuing to cause will be sustained in the Eastern District of Michigan.

**ANSWER:  The allegations in the first sentence of Paragraph 5 contain a legal conclusion and thus no answer is required.  Should an answer be required, TMI**

3

does not contest venue.  **TMI denies the allegations in the last sentence of Paragraph 5.**

## Factual Allegations

6.     TMI is in the business of manufacturing, assembling, repairing, and selling different types of industrial trailers and semitrailers.

**ANSWER:  Admitted.**

7.     Inland is a holding company that is a 51% owner and member of Inland Trailer, S. de R.L. de C.V. ("Trailer"). Trailer is a Mexican *Sociedad de Responsabilidad Limitada de Capital Variable* ("Limited Liability Variable Stock Corporation" in English), which is a form of Mexican LLC.

**ANSWER:  Admitted.**

8.     TMI is a 49% owner and the other member of Trailer.

**ANSWER:  Admitted.**

9.     Trailer was formed with the purpose of, among other things, increasing TMI's capacity to manufacture, assemble, repair, and sell trailers and semitrailers for the benefit of Trailer's members.

**ANSWER:  Denied as written.  The purpose of forming Trailer was to create a joint venture for the purpose, among other things, of increasing the capacity of TMI in the business of manufacturing, assembling, repairing, and selling different types of industrial trailers and semitrailers and other related products**

and services.  As part of the Member Agreement, TMI also agreed to a non-competition provision with Trailer.

10.     Inland's and TMI's rights and obligations related to Trailer are governed by a Member Agreement (the "Contract"), attached to this Amended Complaint as Exhibit 1.

**ANSWER: The Contract speaks for itself. TMI denies any allegation inconsistent with the terms of the Contract. Admitted that the Member Agreement is attached as Exhibit 1.  TMI further states that Inland's and TMI's rights and obligations related to Trailer are governed by the Member Agreement, by the bylaws of Trailer, and by the applicable laws of Mexico.**

11.     The Effective Date of the Contract was March 1, 2022.

**ANSWER: The Contract speaks for itself. TMI denies any allegation inconsistent with the terms of the Contract.**

12.     Section 4.2 of the Contract states that beginning on the Contract's third anniversary, Inland had an option to purchase TMI's membership share in Trailer.

**ANSWER: The Contract speaks for itself. TMI denies any allegation inconsistent with the terms of the Contract.**

13.    Section 4.2 states that, if the option is exercised, TMI is required to select one of the "big four" international accounting firms to value TMI's membership share.

**ANSWER: The Contract speaks for itself. TMI denies any allegation inconsistent with the terms of the Contract.**

14.    Section 4.2 further specifies that the "big four" international accounting firm was required to determine the "fair market value" of TMI's membership share in good faith and "using similar transactions of market or industry," which is a market valuation approach. As the language of the Contract indicates, a market- value approach looks to comparable existing sales and attempts to determine what the market would pay for a similar company as it currently exists.

**ANSWER: The Contract speaks for itself. TMI denies any allegation inconsistent with the terms of the Contract.  TMI denies that the contract requires a market valuation approach using only comparable existing sales.**

15.    On March 4, 2025, Inland notified TMI that it would be exercising its option to buy TMI's membership share in Trailer.

**ANSWER:  Admitted that Inland gave notice with a letter dated March 4, 2025 and received a few days later.**

16.     Inland anticipated that a fair market value of TMI's membership Trailer under the market valuation method would be negligible because Trailer was heavily in debt ($11 million dollars of which was owed to Inland itself).

**ANSWER: TMI lacks knowledge or information sufficient to form a belief as to the truth of the assertions in this paragraph.**

17.     Upon learning of the notice, Rodrigo Soto Pesquera—TMI's president and one of the Board Members of Trailer—reached out to Deloitte Mexico, without providing notice to Inland or the other Board members of Trailer, to begin a valuation of TMI's membership share in Trailer.

**ANSWER: TMI admits that Rodrigo Soto Pesquera is a board member of Trailer and the president of TMI. Mr. Soto is also the president of Trailer.  Mr. Soto contracted with Deloitte Mexico on behalf of Trailer to value Trailer per the terms of the Contract.  Shortly after, Mr. Soto provided to Inland a copy of Trailer's contract with Deloitte Mexico.  TMI denies that Mr. Soto's actions were in any way inconsistent with the terms of the contract.**

18.     Although Deloitte Mexico's engagement should have been with both Inland and TMI (i.e., the two existing members of Trailer), Mr. Soto purported to enter into the engagement on behalf of Trailer itself.

**ANSWER:  Admitted only that, as president of Trailer, Mr. Soto entered into the engagement with Deloitte Mexico on Trailer's behalf. The remaining allegations in Paragraph 18 are denied as untrue.**

19.    Mr. Soto did not provide Deloitte Mexico with a copy of the Contract or the binding provision of that Contract governing the valuation, and he did not tell Deloitte Mexico that the Contract required Deloitte to value TMI's membership share in Trailer using a market valuation approach.

**ANSWER:  Denied.**

20.    Instead, Mr. Soto instructed Deloitte Mexico to use a discounted cash flow analysis. Unlike a market valuation approach (which looks to comparable sales of businesses in the current marketplace), a discounted cash flow analysis attempts to value a company based on that company's own projections of its future cash flow.

**ANSWER:  Denied.**

21.    Mr. Soto provided Deloitte Mexico inexplicably high and wholly insupportable projections of Trailer's future revenue and profit margins. For instance, he claimed that Trailer would have a 25% profit margin in the future, despite having only an 8% profit margin historically. He provided these overinflated projections of future profitability to obtain a significantly inflated valuation for TMI's membership share in Trailer.

**ANSWER:  Denied.**

22.     In April 2025, Inland learned that Mr. Soto had instructed Deloitte Mexico to begin valuing TMI's membership interest in Trailer, and of the erroneous data he had provided Deloitte Mexico in an effort to overvalue Trailer. Inland objected to the use of this data in the valuation process. It was not, however, aware that Deloitte Mexico did not have the parties' Contract or that Deloitte Mexico would not be performing a market valuation approach called for in that Contract.

**ANSWER:  TMI lacks knowledge or information sufficient to form a belief as to the truth of the assertions in this paragraph.  TMI denies the assertion that Deloitte Mexico did not have the Contract or that Deloitte's valuation was inconsistent with the Contract.**

23.     Deloitte Mexico initially represented—consistent with best practices— that it would not provide a valuation due to the dispute between the two members of Trailer.

**ANSWER:  TMI lacks knowledge or information sufficient to form a belief as to the truth of the assertions in this paragraph.**

24.     Mr. Soto then falsely represented to Deloitte Mexico that as the President of Trailer, he was authorized to direct Deloitte Mexico to complete and issue the valuation, which did not comport with the methodology required by the

Contract and which included bad-faith, unsupportable, and self-serving projections and data supplied by Mr. Soto.

**ANSWER:** **Denied.**

      25.    Deloitte Mexico inexplicably did so, despite best practices and inconsistent with its duty of care, providing a wildly overinflated value of $14,000,000 for Trailer.

**ANSWER:** **Denied.**

      26.    On June 3, 2024, representatives of Inland held a meeting with Mr. Soto's lawyer and Pablo Castillo, the accountant from Deloitte Mexico who performed the appraisal. During the meeting, Mr. Castillo confirmed that he was never provided with a copy of the Contract or its relevant provisions, did not know that the Contract required him to value TMI's membership share using a market valuation method (and not a discounted cash flow method), and that his $14,000,000 valuation of Trailer was not a market valuation approach.

**ANSWER:** **The allegations of the first sentence are admitted.  The remaining allegations are denied.**

      27.    With full knowledge that Deloitte Mexico's valuation was unauthorized, was prepared using a contractually-forbidden methodology, and was based on inflated projections and incorrect data provided by Mr. Soto, TMI has

demanded that Inland immediately purchase its 49% membership share using the improper Deloitte Mexico valuation.

**ANSWER: TMI admits only that, after Inland exercised its option to buy TMI's 49% membership share, TMI obtained a valuation per the terms of the Contract, and that TMI demanded that Inland uphold its obligations by closing on the sale.  TMI denies the remaining allegations in Paragraph 27.**

28.    Under a proper valuation and in light of Trailer's significant debt, Inland would be entitled to purchase TMI's membership interest in Trailer for a negligible sum at most, and for many millions of dollars less than what TMI is demanding based on Deloitte Mexico's improper valuation.

**ANSWER:  Denied.**

## Count One: Breach of Contract

29.    Inland incorporates the foregoing allegations.

**ANSWER:  TMI incorporates by reference its answers to each of the preceding paragraphs.**

30.    Inland and TMI have a binding contract that permits Inland the option to buy TMI's membership share in Trailer.

**ANSWER: The contract speaks for itself. TMI denies any allegation inconsistent with the terms of that agreement.**

31.     That contract further provides that the value of TMI's membership share must be performed using a market valuation approach.

**ANSWER: The contract speaks for itself. TMI denies any allegation inconsistent with the terms of that agreement.**

32.     TMI breached the contract as set forth herein, including without limitation by: (a) directing Deloitte Mexico to use a valuation method that was not permitted by the parties' contract; (b) overinflating, in bad faith, the valuation of TMI's membership share by millions of dollars; and (c) refusing to allow Inland to exercise its option at a value based on the contractually-required market valuation method.

**ANSWER:  Denied.**

33.     The parties' contract states that upon breach, a party "will have the right to seek and to have the specific performance of this Agreement." Ex. 1 ¶ 10.5.

**ANSWER: The contract speaks for itself. TMI denies any allegation inconsistent with the terms of that agreement and further denies that it breached the contract.**

34.     The parties' contract further states that in "the event of a dispute concerning the enforcement or interpretation of this Agreement, the prevailing

party… will be entitled to recover … reasonable attorneys' fees and other reasonable and documented costs and expenses incurred by the prevailing party." *Id*.

**ANSWER: The contract speaks for itself. TMI denies any allegation inconsistent with the terms of that agreement and further denies that it breached the contract.**

35.    Inland has further been forced to incur costs and attorneys' fees, and continues to incur costs and attorneys' fees, related to TMI's failure to comply with its contractual obligations.

**ANSWER: Denied.**

### Count Two: Declaratory Judgment

36.    Inland incorporates the foregoing allegations.

**ANSWER: TMI incorporates by reference its answers to each of the preceding paragraphs.**

37.    Under 28 U.S.C. § 2201, a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," with such declaration having the force and effect of a final judgment.

**ANSWER:  The allegations in Paragraph 37 contain a legal conclusion to which no response is required.  If an answer is required, the controlling legal authority speaks for itself.**

38.     The legal rights or obligations in question in this matter include the interpretation of the parties' contract, including the methodology that must be used in determining the fair market value of TMI's valuation.

**ANSWER:  TMI admits that Count Two of Inland's amended complaint seeks a declaration of rights on the issues described in Paragraph 38 but denies that Inland is entitled to any of those declarations or any other relief.  TMI otherwise denies any remaining allegations in Paragraph 38.**

39.     Inland seeks a declaratory judgment under § 2201, declaring that:

a.      TMI's current valuation as performed by Deloitte Mexico violates the parties' contract and may not be used as a basis for the membership interest's valuation;

b.      TMI must, jointly with Inland, have Deloitte Mexico or one of the other "big four" accounting firms provide a new valuation using the market valuation approach as required by the parties' contract; and

c.      TMI is required to sell its membership share to Inland at that market valuation, as required by the parties' contract.

**ANSWER:  TMI admits that Inland seeks the relief described in Paragraph 39 but denies that Inland is entitled to that or any other relief and otherwise denies any remaining allegations in Paragraph 39.**

40.     Inland further prays that upon making such a declaration that the Court will grant Inland's request for injunctive relief and specific performance of the contract; namely, requiring TMI to perform all steps necessary to properly value and sell its membership share to Inland based on that valuation.

**ANSWER:** TMI admits that Inland seeks the relief described in Paragraph 40 but denies that Inland is entitled to that or any other relief and otherwise denies any remaining allegations in Paragraph 40.

### Affirmative Defenses

1.    **Plaintiff's amended complaint fails to state a claim on which relief can be granted.**

2.    **Plaintiff's claims may be barred by the doctrines of waiver, estoppel, unclean hands, and/or laches.**

3.    **At all relevant times, Defendant has acted in good faith and in compliance with the law.**

4.    **Plaintiff's claims may be barred by prior material breach. In particular, Plaintiff breached both the Supply Agreement and the Joint Venture Agreement by failing to purchase the required number of trailers.**

5.    **Defendant reserves the right to assert additional affirmative defenses to Plaintiff's amended complaint as they become known.**

**WHEREFORE, Defendant TMI Trailer Mechanic International, S.A. de C.V. requests this Court dismiss Plaintiffs Amended Complaint and award Defendant TMI its costs and expenses incurred defending this action**.

## Counterclaim

TMI states the following counterclaim against Inland:

## Parties, Jurisdiction, and Venue

1.      Counter-plaintiff TMI is organized under the laws of Mexico and has its principal place of business in Querétaro, Mexico.

2.       Counter-defendant Inland is a Michigan limited liability company. According to Inland, its sole member is a Michigan trust whose trustee is a Michigan resident.

3.      This Court has subject matter jurisdiction over this counterclaim because the amount in controversy exceeds $75,000 and is between a citizen of a State and a citizen of a foreign state.

4.      This Court has personal jurisdiction over Inland because Inland submitted itself to the jurisdiction of this Court by filing this lawsuit and because Inland is a Michigan citizen.

5.      Venue is proper in this Court per Fed. R. Civ. P. 13.

## Factual Allegations

### *Joint Venture Agreement*

6.      TMI and Inland entered into a Joint Venture Agreement, effective November 5, 2021, a copy of which is attached as **Exhibit A**.

7.     As part of the Joint Venture Agreement, Inland agreed to execute a Supply Agreement with Trailer.  Exhibit A, ¶ 1.3(d).

8.     Inland did, in fact, execute a Supply Agreement, a copy of which is attached as **Exhibit B**.

9.     The Supply Agreement required Inland to purchase a minimum number of trailers from Trailer.

10.     Inland's execution of the Supply Agreement was a material part of the Joint Venture Agreement.  In fact, the Joint Venture Agreement acknowledges that the Supply Agreement, requiring Inland to purchase a minimum number of trailers, was part of Inland's initial contribution to the joint venture.

11.     Inland's agreement to purchase a minimum number of trailers from Trailer was critical to the success of the joint venture.  Without Inland's agreed-upon purchases, Trailer could not succeed.

12.     This is especially true because, as part of the Member Agreement (attached to Inland's complaint as Exhibit 1), TMI agreed to a ten-year, non-competition provision, restricting TMI's ability to compete against Trailer.  By agreeing to the joint venture, TMI effectively took itself out of the market, agreeing not to compete against Trailer.

13.     TMI would not have agreed to a non-competition provision but for Inland's promise, as stated in the Joint Venture Agreement, to contribute to the joint venture by committing to purchase a minimum number of trailers.

14.     Inland has breached the Supply Agreement.  Inland has failed to purchase the minimum amounts as required by the Supply Agreement.

15.     While TMI is not a party to the Supply Agreement, Trailer is.  Trailer has sued Inland for breach of the Supply Agreement.  That lawsuit is pending in the courts of Querétaro, Mexico.

16.     By breaching the Supply Agreement, Inland has also breached the Joint Venture Agreement.  By failing to purchase the required number of trailers, Inland has failed to make its required contributions to the joint venture, as required by the Joint Venture Agreement.

### *Member Agreement*

17.     On March 4, 2025, Inland gave notice that it was exercising its option, under ¶ 4.2 of the Member Agreement, to purchase TMI's Membership Units in Trailer.

18.     The Member Agreement states: "the purchase price of the TMI's Membership Units will be equal to the fair market value of the TMI's Membership Units at the time the Holdings' Option is exercised plus a premium equal to thirty five percent (35%) of such fair market value."

19.     The Member Agreement further states: "Fair market value shall mean the fair market value using similar transactions of market or industry and shall be determined in good faith by one of the big four international accounting firms (E&Y, Deloitte, PWC or KPMG) selected by TMI."

20.     In accordance with the Member Agreement, TMI selected Deloitte to determine the fair market value of TMI's Membership Units.

21.     TMI provided Deloitte with the applicable language from the Member Agreement.

22.     Deloitte conducted its valuation.   Using applicable accounting guidelines, it determined the fair market value of TMI's Membership Units using similar transactions of market or industry and in good faith.

23.     Deloitte determined that the fair market value of TMI's Membership Units, at the time Inland exercised its option, was $5.1 million USD.  With the premium of 35%, as required by the Member Agreement, the purchase price of TMI's Membership Units, therefore, is $6.9 million USD.

24.     The Member Agreement requires that closing on the purchase of the Membership Units occur within 90 days of when TMI receives notice that Inland has exercised its option to purchase TMI's interest.

25.     TMI prepared all documents necessary to close on the sale and performed all conditions precedent to the closing.

26.     Inland refused to close on the sale.

## Count I – Breach of the Member Agreement

27.     TMI incorporates by reference the foregoing allegations.

28.     The Member Agreement is a valid, binding contract.

29.     TMI has performed all of its obligations under the Member Agreement.

30.     By refusing to close on the purchase of TMI's Membership Units at the price determined by Deloitte, Inland breached the Member Agreement.

31.     Per the Member Agreement, TMI is entitled to specific performance of the Member Agreement.

32.     Alternatively, TMI is entitled to a money judgment in the amount of its damages.

33.     Per the Member Agreement, TMI is also entitled to its reasonable attorneys' fees and other reasonable and documented costs and expenses incurred as a result of Inland's breach.

## Count II – Breach of the Joint Venture Agreement

34.     TMI incorporates by reference the foregoing allegations.

35.     The Joint Venture Agreement is a valid, binding contract.

36.     By breaching the Supply Agreement, Inland likewise breached the Joint Venture Agreement.

37.     TMI has been damaged as a result.

38.     TMI is entitled to a money judgment in the amount of its damages.  Per the Joint Venture Agreement, TMI is also entitled to all the documented costs and expenses, including reasonable attorneys' fees, incurred in prosecuting this case.

## Count III – Minority Shareholder Oppression (Michigan law)

39.     TMI incorporates by reference the foregoing allegations.

40.     The Michigan Business Corporations Act "applies to . . . every foreign corporation which is authorized to or does transact business in this state except as otherwise provided in this act or by other law."  The act "also applies to any other. . . foreign corporation not formed under this act to the extent, if any, provided under this act or any law governing the corporation."  Mich. Comp. Laws 450.1121.

41.     While Trailer is formed under the laws of Mexico, the Joint Venture Agreement is governed by Michigan law.

42.     Trailer also transacts business in Michigan.

43.     As a result, Trailer is subject to the Michigan Business Corporations Act, Mich. Comp. Laws 450.1101 et seq.

44.     Mich. Comp. Laws 450.1489 allows a shareholder to bring an action to establish that "the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder."

45.     TMI owns a minority interest in Trailer.

21

46.     Inland owns the controlling interest.

47.     The actions of Inland are illegal, fraudulent, or willfully unfair and oppressive to both Trailer and to TMI.

48.     By way of example, by failing to make the minimum purchases required under the Supply Agreement, Inland has breached its obligations to Trailer and depressed the value of TMI's interests in Trailer.

49.     Inland has also engaged in self-dealing. As the majority interest owner in Trailer, it has entered into contracts with Trailer that are on favorable terms to Inland and are detrimental to the interests of TMI.

50.     Additionally, Inland has increased Trailer's tax liability and depressed the value of TMI's interests in Trailer by arranging to have Trailer's vendors paid in a manner that prohibits Trailer from recovering its Value Added Tax (VAT) reimbursement under Mexican law. In fact, due solely to Inland's actions, Trailer has a substantial VAT account receivable for which Trailer will be unable to collect.

51.     Inland has also interfered with TMI's rights to inspect the books and records of Trailer.

52.     Inland has taken other actions that are illegal, fraudulent, or willfully unfair and oppressive to either Trailer and to TMI, as will be revealed by discovery.

53.     TMI is entitled to all available remedies under Mich Comp. Laws 450.1489, including purchase of TMI's interest in Trailer at fair value.

## **Count IV – Minority Shareholder Oppression (Mexican law)**

54.     TMI incorporates by reference the foregoing allegations.

55.     Trailer is formed under the laws of Mexico.  As such, it is subject to the *Ley General de Sociedades Mercantiles* ("LGSM"), which is the General Law of Commercial Companies.

56.     In fact, the Member Agreement, acknowledges that the LGSM is applicable to Trailer.  It states that in the event of any conflict between Michigan law and the LGSM, the LGSM will prevail.

57.     The LGSM, like the Michigan Business Corporations Act, prohibits a majority interest owner from taking actions to the minority interest owners rights.

58.     TMI owns a minority interest in Trailer.

59.     Inland owns the controlling interest.

60.     The actions of Inland are illegal, fraudulent, or willfully unfair and oppressive to both Trailer and to TMI.

61.     By way of example, by failing to make the minimum purchases required under the Supply Agreement, Inland has breached its obligations to Trailer and depressed the value of TMI's interests in Trailer.

62.     Inland has also engaged in self-dealing.  As the majority interest owner in Trailer, it has entered into contracts with Trailer that are on favorable terms to Inland and are detrimental to the interests of TMI.

63.     Additionally, Inland has increased Trailer's tax liability and depressed the value of TMI's interests in Trailer by paying Trailer's vendors in a manner that prohibits Trailer from recovering its Value Added Tax (VAT) reimbursement under Mexican law.  In fact, due solely to Inland's actions, Trailer has a substantial VAT account receivable for which Trailer will be unable to collect.

64.     Inland has also interfered with TMI's rights to inspect the books and records of Trailer.

65.     Inland has taken other actions that are illegal, fraudulent, or willfully unfair and oppressive to either Trailer and to TMI, as will be revealed by discovery.

66.     TMI is entitled to all available remedies under the LGSM.

WHEREFORE, Counter-Plaintiff TMI Trailer Mechanic International, S.A. de C.V. requests this Court enter judgment in its favor, ordering specific performance and entering a judgment for money damages, as well as awarding interest, attorneys' fees, and all other relief available at law or equity.

MILLER JOHNSON
Attorneys for Defendant

Dated:  July 14, 2025          By    /s/ D. Andrew Portinga
                                        D. Andrew Portinga (P55804)
                                        Amanda L. Rauh-Bieri (P83615)
                                   Business Address:
                                        45 Ottawa Avenue SW, Suite 1100
                                        Grand Rapids, Michigan  49503
                                   Telephone:  (616) 831-1700
                                        portingaa@millerjohnson.com
                                        rauhbieria@millerjohnson.com

**Certificate of Service**

D. Andrew Portinga certifies that, on July 14, 2025, the foregoing *Defendants Answer, Affirmative Defenses, and Counterclaim* was served upon the attorney(s) of record pursuant to this Court's electronic e-filing system.

MILLER JOHNSON
Attorneys for Defendant

Dated:  July 14, 2025          By _____/s/ D. Andrew Portinga_____
                                   D. Andrew Portinga (P55804)
                               Business Address:
                                   45 Ottawa Avenue SW, Suite 1100
                                   Grand Rapids, Michigan  49503
                               Telephone:  (616) 831-1700
                                   portingaa@millerjohnson.com

26