# EXHIBIT A

# EXHIBIT A

EXHIBIT A

EXHIBIT A

## JOINT VENTURE AGREEMENT

This Joint Venture Agreement (this "Agreement") is made and entered into effective as of November 5, 2021 by and between Inland Trailer Holdings, LLC ("Holdings") and TMI Trailer Mechanic International, S.A. de C.V. ("TMI"). Holdings and TMI will be individually referred to as a "Party" and collectively as the "Parties".

### RECITALS:

A.      TMI is in the business of manufacturing, assembling, repairing, and selling different types of industrial trailers and semitrailers (the "Trailers") and other related products and services (the "Business"). TMI has its principal manufacturing, warehousing and distribution facilities at Privada del Marques 2, Parque Industrial El Marques, El Colorado, El Marques, Querétaro, Zip Code 76246 (the "Facilities"). The Facilities are owned by TMI's shareholders (the "Shareholders").

B.      TMI is the owner or otherwise has control of all the assets located at the Facilities or otherwise used in or related to the operation of the Business (collectively, the "Assets"). The Assets include, without limitation, the infrastructure described in Exhibit A; the machinery and equipment listed in Exhibit B; the raw materials, inventory (including inventory with accounts payable, which will be assumed by the Operating Company (as defined below) but excluding final products that TMI has invoiced to its customers as of the Closing Date (as defined below)) and work in process described in Exhibit C; all intellectual property and proprietary rights in any jurisdiction used in or in connection with the Business, including: patents, patent applications, inventions, revisions or improvements, trade secrets, technical data, technology, know-how, methods and processes, unregistered and registered copyrights and copyrightable works, and any similar or equivalent rights to any of the foregoing, including but not limited to, the rights listed in Exhibit D; all permits, approvals, registrations, licenses, certifications, or other authorizations of any governmental entity or other third-parties related to the Business, to the extent assignable; including those listed in Exhibit E; all the agreements and commitments related to the Business listed in Exhibit F; and the miscellaneous assets listed in Exhibit G. Notwithstanding the above, the Assets will not include the assets and properties related to space-it and aftermarket products and services owned or otherwise controlled by TMI, whether used in connection with the Business or not, and whether located at the Facilities or elsewhere, which are listed in Exhibit H and the other assets also listed in Exhibit H (the "Excluded Assets"). All the Exhibits will be updated on the date the Assets are contributed to the Land Company (as defined below) or the Operating Company, as applicable (the "Closing Date") to reflect the Assets or the Excluded Assets as of the Closing Date. The Closing Date shall occur on or prior to the End Date (as defined below). Also, (i) for purposes of this Agreement Exhibit C will reflect the raw materials, inventory and work in process on TMI's balance sheet as of the day prior to the date of this Agreement and (ii) on the day prior to the Closing Date, TMI will conduct a physical inventory to true up the list of raw materials, inventory and work in process.

C.      TMI, GLS Leasco, Inc. ("GLS"), an affiliate of Holdings, and Holdings have been negotiating a joint venture to operate and grow the Business and TMI and GLS executed that certain letter of intent dated July 1, 2021 (the "LOI") for such purposes. In furtherance of the LOI, TMI and Holdings, the latter as an affiliate and designee of GLS pursuant to the terms of the LOI, are negotiating the JV Documents (as defined below) to document the general terms and conditions of the proposed joint venture.

NOW, THEREFORE, for and in consideration of the foregoing and the mutual covenants and promises herein contained, the Parties mutually agree as follows:



ARTICLE I
OBJECT OF THE JOINT VENTURE

1.1     Formation and Purpose of the Joint Venture.  The Parties hereby agree to create a joint venture (the "Joint Venture") subject to the terms and conditions set forth in this Agreement and the different agreements to be executed pursuant to this Agreement (collectively with this Agreement, the "JV Documents"), including those listed in Section 1.3 below.  The primary purposes of the Joint Venture will be to acquire all the Assets and infrastructure necessary to develop, increase, grow and exploit the Business according to the schedules, terms and conditions set forth in the JV Documents and as further agreed by the Parties in writing.

1.2     Formation of the JV Companies.  The Parties have become members of a Mexican company called Inland Trailer, S. de R.L. de C.V. (formerly called Cen-Tran Michigan Transporte Tradicional, S. de R.L. de C.V.) (the "Operating Company").  Affiliates of Holdings formed and managed the Operating Company and Holdings shall be responsible for any prior liabilities of the Operating Company.  The Operating Company will own all the Assets and will own and operate the Business.  In addition, Holdings and the Shareholders have become members of a Mexican company under the name Inland Trailer Land, S. de R.L. de C.V. (the "Land Company" and together with the Operating Company, the "JV Companies").  The Land Company will own the land and premises where the Facilities are located and all improvements thereon and all other real estate rights thereto (collectively, the "Real Estate").

1.3     JV Documents.  To implement the Joint Venture, the Parties agree to execute and deliver (and/or to cause the Shareholders or their respective affiliated parties to execute and deliver) the following documents:

(a)     A membership units purchase agreement to become members of the Operating Company.

(b)     Written resolutions adopted by all the members of the Operating Company in lieu of a meeting to amend and restate the bylaws of the Operating Company.

(c)     A members agreement setting forth the rules for various matters related to the Operating Company, including the following: initial capital contributions by each Party (including commercially reasonable representations and warranties regarding such contributions); additional capital contributions; size, composition and authority of the board of managers and other governance matters; matters that require the unanimous vote of all managers and/or members; the initial Annual Plan (as defined in the LOI); admission of new members; buy-sell matters of membership units; restrictions on transfers, preferential rights and rights of first refusal; distributions; winding down and liquidation; non-competes from TMI, Holdings and their respective affiliates; indemnity obligations; and other miscellaneous matters (the "OC Operating Agreement").

(d)     A supply agreement between Holdings and the Operating Company whereby Holdings will agree to order, or cause its affiliates to order, and the Operating Company will agree to supply, Trailers (the "Supply Agreement").

(e)     One or two revolving credit agreement(s) to document the Loan (as defined in Section 2.3 below) (the "Credit Agreements").

(f)     A non-possessory security agreement between Lender and the Operating Company to grant a security interest to Lender on all the assets of the Operating Company as collateral for the Loan (the "OC Asset Pledge").



73525947 v7

(g)      An agreement between Rodrigo Soto Pesquera ("Rodrigo") or an entity designated by Rodrigo and the Operating Company to document the terms and conditions under which Rodrigo will provide services to the Operating Company (the "Engagement Agreement").

(h)      An employer substitution agreement between TMI and the Operating Company to transfer all the employees working on the Business to the Operating Company.  This agreement will be executed at the time the Assets are transferred to the Operating Company as set forth in Section 2.1(a)(i) below.

(i)      Assignment documents for any contracts, to the extent assignable, or other Assets to be contributed by TMI to the Operating Company.

(j)      Public instrument of organization to form the Land Company with articles of formation, bylaws, appointment of board members and powers of attorney.

(k)      A member agreement setting forth the rules for various matters related to the Land Company, including the following: initial capital contributions (including commercially reasonable representations and warranties regarding such contributions); additional capital contributions; size, composition and authority of the board of managers and other governance matters; matters that require the unanimous vote of all managers and/or members; admission of new members; buy-sell matters of membership units; restrictions on transfers, preferential rights and rights of first refusal; distributions; winding down and liquidation; indemnity obligations; and other miscellaneous matters (the "LC Operating Agreement" and together with the OC Operating Agreement, the "JV Operating Agreements").

(l)      A deed whereby the Shareholders will transfer and contribute title to the Real Estate to the Land Company (the "Real Estate Deed").

(m)      A mortgage between Lender and the Land Company to mortgage the Real Estate to Lender as collateral for the Loan (the "Mortgage").

(n)      A lease between the Operating Company and the Land Company whereby the Land Company will lease the Real Estate to the Operating Company for a term of at least five (5) years, with multiple renewal options.

(o)      Other documents that are ancillary to, or that are necessary or convenient to implement any of, the JV Documents.

1.4      Limitation of Liability.  None of the Parties will be responsible or liable for any indebtedness or obligation of the other Party, the Joint Venture or the JV Companies incurred either before or after the execution of the JV Documents.

ARTICLE II
CONTRIBUTIONS; LOAN; PURCHASE ORDERS; OWNERSHIP, PROFITS AND LOSSES

2.1      Initial Contributions.  The Parties agree to make the following initial contributions to the Joint Venture:

(a)      *TMI's Initial Contributions*.  TMI will be responsible for the following initial contributions:

(i)      TMI will transfer to the Operating Company all the Assets owned by TMI and, for any Assets that are not owned by TMI and used in connection with the Business, TMI will cause the owners of such Assets to transfer those Assets to the Operating Company.  These transfers will include all and any rights to the Assets and the Assets will be transferred to the Operating Company free of all liens, encumbrances,



73525947 v7

limitations or restrictions of any kind. TMI (and to the extent applicable, all other owners of any part of the Assets) will retain all the liabilities and obligations arising out of or related to the Assets or the operation of the Business up to the date the Assets are transferred to the Operating Company. The OC Operating Agreement will include provisions applicable to the transfer of the Assets to the Operating Company and the transfer of the Assets will be subject to all such provisions. For avoidance of doubt, the Parties acknowledge and agree that the term "Assets" includes all and any assets, properties or rights owned by or under the control of TMI or that are otherwise used in or in connection with or that are related to the Business on the Closing Date, whether located at the Facilities or elsewhere. Moreover, for avoidance of doubt, the Parties acknowledge and agree that the term "Assets" does not include the Excluded Assets.

(ii)     TMI will transfer, and will cause the Shareholders or any other individual or entity holding any interests on the Real Estate to transfer, to the Land Company all ownership rights and all other right onto the Real Estate. The Real Estate will be transferred to the Land Company free of all mortgages, liens, encumbrances, limitations or restrictions of any kind, except for any statutory and/or regulatory limitations or restrictions, but without any warranty regarding the physical condition of the Real Estate. The LC Operating Agreement and the Real Estate Deed will include provisions applicable to the transfer of the Real Estate to the Land Company and the transfer of the Real Estate will  be subject to all such provisions.

(b)     *Holdings' Initial Contributions*. Holdings will contribute, directly or through an affiliate, cash to the Operating Company and the Land Company an initial cash contribution to be agreed upon by the Parties according to paragraph 5. of the LOI, in the understanding that such initial cash contribution will be for a combined minimum amount of not less than US$2,350,000 (two million three hundred fifty thousand U.S. dollars). The JV Operating Agreements will include provisions applicable to Holdings' cash contributions and Holdings' cash contributions will be subject to all such provisions.

2.2     Orders of Trailers. In addition to its cash contribution under Section 2.1(b), Holdings will enter into the Supply Agreement whereby Holdings will commit to (a) issue or cause its affiliates to issue the Guaranteed POs (as defined in the LOI) and (b) purchase minimum amounts of Trailers on a going forward basis according to the parameters referenced in Exhibit A to the LOI. The Supply Agreement will set forth the terms and conditions under which (i) Holdings, directly or through its affiliates, will purchase Trailers from the Operating Company and (ii) the Operating Company will supply such Trailers.

2.3     Loan. Also, Holdings, directly or through an affiliate (as applicable, "Lender"), will grant the Operating Company and/or the Land Company one or more credit facilities (collectively, the "Loan") to be used exclusively in the Business. The amount of the Loan will be agreed upon by the Parties and will be based on the Operating Company's and the Land Company's expected cash needs and the amount of Holdings' initial cash contribution, in the understating that the principal amount of the Loan will be for a combined minimum amount of not less than US$2,500,000 (two million five hundred thousand U.S. dollars). The Credit Agreements will set forth the terms and conditions of the Loan. At the time the Credit Agreements are executed, the Parties will execute and deliver, and will cause Lender, the Operating Company, the Land Company, TMI and the Shareholders to execute and deliver, the OC Asset Pledge and the Mortgage.

2.4     Allocation of Profits and Losses. The profits and losses of the Joint Venture will be determined and allocated in accordance with the JV Operating Agreements.

2.5     Distributions and Other Payments. The JV Operating Agreements will set forth the rules to make any distributions or other payments to the Parties or their affiliates. The Parties intend to reinvest in the Business all the revenues generated by the Business until the board of managers of the Operating Company determines such reinvestment is no longer necessary or as otherwise agreed by the Parties.



73525947 v7

Except for payments related to the Lease, the Loan or the Engagement Agreement, no distributions or other payments of any kind or for any reason will be made without the prior written approval of the board of managers of the Operating Company or the Land Company, as applicable, or as otherwise agreed by the parties.

## ARTICLE III
## MISCELLANEOUS

3.1     Governing Documents.   The rights and obligations of the Parties (and their affiliates, as applicable) and the JV Companies, and the business, administration and termination of the Joint Venture and the JV Companies will be governed by the JV Documents, as they may be amended from time to time.   In the event of any conflict between the provisions in this Agreement and the provisions in a JV Document, the provisions in this Agreement will prevail.   In the event of any conflict between the provisions in two JV Documents, the provisions of the JV Document that is more specific to the matter in discrepancy will prevail.

3.2     Condition Precedent.   The Parties expressly agree that even though the JV Agreements will be executed and delivered on different dates, the full execution and delivery of the documents listed in (a) through (o) of Section 1.3 (the "Section 1.3 Documents") will be a condition precedent for the Joint Venture to be formed.   The Parties further agree that all the Section 1.3 Documents must be fully executed and delivered, or their execution and delivery waived or discharged, by all Parties thereto no later than March 31, 2022 (the "End Date").   The End Date may be modified only by the written agreement of both Parties.   In the event that the Section 1.3 Documents are not fully executed and delivered, or their execution and delivery is waived or discharged, by the End Date, either Party may notify the other Party of its decision to terminate this Agreement and all negotiations regarding the Joint Venture, in which case, this Agreement and all negotiations regarding the Joint Venture will terminate and both Parties will proceed in good faith and at their own cost to terminate and unwind all of the JV Documents that may have been executed as of the date of termination of this Agreement.

3.3     Assignment.   Except as expressly permitted in the JV Documents or unless expressly agreed by the Parties in writing, the JV Documents and any rights or obligations thereunder may not be assigned by either Party without the prior written consent of the other Party.

3.4     Notices.   All notices, requests, demands and other communication required or permitted to be given in connection with this Agreement must be in writing and sent by personal courier or by the courier service of FedEx, DHL or UPS for overnight delivery, postage prepaid and addressed to such Party at the following addresses:



To TMI:

TMI Trailer Mechanic International, S.A. de C.V.
Privada Del Marques No. 2
Col. Parque Industrial El Marques
El Marques, Querétaro, México C.P. 76246
Attn:  Rodrigo Soto Pesquera

To Holdings:

Inland Trailer Holdings, LLC
12225 Stephens Rd
Warren, Michigan, USA  48089-2010
Attn:  Kyle Blain

73325947 v7

With a copy to (which will not constitute notice to Holdings):

Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota, USA 55402-1425
Attn: Luis G. Reséndiz

Each Party may change its address to receive notices by providing written notice to the other Party as provided in this Section at least ten (10) calendar days prior to the effective date of the change. All periods of notice shall be measured from the date of delivery thereof if personally delivered or from the first business day after the date of sending if sent by overnight courier.

3.5     Amendments. None of the terms in this Agreement may be changed, waived, discharged or terminated orally but only by an instrument in writing signed by each of the Parties.

3.6     Severability. If any provision of any of the JV Documents or the application thereof, will for any reason be invalid or unenforceable, the remainder of the JV Documents and the application of such provision to other persons or circumstances will not be affected thereby but rather will be enforced to the maximum extent permissible under applicable law.

3.7     Governing Law; Venue. This Agreement will be construed and enforced in accordance with the laws of the State of Michigan, USA, excluding conflicts of law provisions. In case of any controversy arising under or related to this Agreement, the Parties agree to submit themselves to the exclusive jurisdiction of the U.S. Federal District Court for the Eastern District of Michigan, USA or the State courts located in Macomb County, Michigan, USA. Said courts will have exclusive jurisdiction, and the Parties agree to submit themselves to the jurisdiction and venue of such courts and not to initiate any litigation anywhere else. The Parties expressly waive any right to any other jurisdiction or venue that may apply to them by virtue of their current or future domiciles or for any other reason. The provisions in this paragraph will not apply to any dispute arising under or related to any other JV Document, even if provisions under this Agreement may also be part of the dispute; such dispute will be resolved according to the governing law and venue provisions under the particular JV Document involved.

3.8     Costs of Enforcement. In case of any dispute arising under or related to this Agreement, the non-prevailing Party will pay all the documented costs and expenses incurred by the prevailing Party in prosecuting or defending such dispute, including reasonable attorneys' fees.

3.9     Counterparts. This Agreement may be executed in any number of counterparts, all of which will constitute one and the same instrument, and any Party may execute this Agreement by signing any such counterpart. Copies of this Agreement with signatures transmitted by email or other electronic means shall be deemed to be original signed versions of this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date stated in the first paragraph.

| | |
|---|---|
| TMI Trailer Mechanic International, S.A. de C.V. | Inland Trailer Holdings, LLC |
| By: | By: |
| Name: Rodrigo Soto Pesquera | Name: Kyle Blaia |
| Its: Sole Director | Its: President |

73525947 v7

<u>Exhibit A</u>

**Infrastructure**

[Attached]





<u>Exhibit B</u>

**Machinery and Equipment**

[Attached]



# ACTIVO FIJO

| CANTIDAD | MOBILIARIO Y EQUIPO DE OFICINA | MARCA |
|---|---|---|
| 1 | ISLA CON MAMPARAS P/4 PERSONAS GRANDE | |
| 2 | ANAQUEL METALICO | PM STEELE |
| 1 | GABINETE MULTIUSOS GRIS | |
| 1 KIT | 2 ESCRITORIOS, 3 CREDENZAS, 4 SILLAS MALLA COLOR ROJO | PM STEELE |
| 1 | MESA DE TRABAJO | TORREY |
| 1 | ESTANTE MURAL PARA COMEDOR | TORREY |
| 2 | LIBREROS METALICOS ESTUDIO | |
| 1 | MESA P/SALA DE JUNTAS | PM STEELE |
| 1 | ESCRITORIO COMPLETO C/CAJONERA | PM STEELE |
| 1 | LG MINISPLIT 1 TON 110V F/C | LG |
| 1 | LOCKER TROYA 4 PUERTAS 38X45 MARCA PROPIA | PM STEELE |
| 9 | SILLA OPEREATIVA | |
| 1 | SILLA EJECUTIVA | GEBESA |
| 1 | ISLA CON MAMPARAS P/4 PERSONAS | PMSTEELE |
| | RED VOZ Y DATOS | TELEFONIA DIGITAL |
| 1 | SILLA OPERATIVA RESP MALLA | PM STEELE |
| | LOCKER C/CERRAD 40X45/2 | |
| 1 | REFRIGERADOR VERTICAL 2 PTAS 42 PIES | TORREY |
| 1 | ANAQUEL ACERO INOX TRES ENTREPAÑOS | TORREY |
| 2 | 2 SILLONES EJECUTIVOS | PM STEELE |
| 1 KIT | 2 MESAS, 2 SILLONES Y 3 PEDESTALES | GEBESA |
| 1 | VITRINA EXHIBIGROUP ABRIL 2018 | EXIBIGROUP |
| 1 | LIBRERO DE MADERA | OFFICE DEPOT |
| 1 | GABINETE Y SILLA SECRETARIAL | OFFICE DEPOT |
| 1 | ESCRITORIO | GEBESA |
| 1 | MUEBLE CON CAJONES CREDENZA CHOCOLATE | PM STEELE |
| 1 | ESCRITORIO GEBESA | GEBESA |
| 1 | GBS310 PEDESTAL BAJO CUBIERTA RH | GEBESA |
| 3 | ESCRITORIO CON PEDESTAL Y SILLA DE TRABAJO | GEBESA |
| 1 | LED ANDROID TV 4K 120 HZ SHARP 60" UHD HDR | SHARP |
| 1 | SILLA SEMI EJECUTIVA VELK NEGRO | GEBESA |
| 1 | MESA DE TRABAJO Y PEDESTAL (DISEÑO) | GEBESA |
| 1 | MESA DE TRABAJO 150.8X58.8X74 SPAZ TWEED/NEGRO | GEBESA |
| 1 | ARCHIVERO 4 GAV NGO TEXTURIZAD | TAMMEX |
| 10 | LOCKER 4 PUERTAS C/MALLA, PORTA CANDADO MED 0.40 | PM STEELE |

| CANTIDAD | EQUIPO DE TRANSPORTE | MARCA |
|---|---|---|
| 1 | CAMION TORTON KENWORTH T370 MODELO 2009 | KEENWORTH |



| CANTIDAD | EQUIPO DE COMPUTO | MARCA |
|---|---|---|
| 1 | IMPRESORA LASERJET 1020 | HP |
| 1 | SERVIDOR QUAD CORE XEON PROCES | DELL |
| 1 | DELL PROJECTOR 1609 | DELL |
| 1 | REGULADOR RESP ENERGIA SUA | |
| 2 | SWITCH | |
| 1 | COMPUTADORA OPTIPLEX | DELL |
| 1 | IMPRESORA HP LASERJET P1102 | HP |
| 1 | LAPTOP DELL | DELL |
| 1 | DELL PRECISION TOWER | DELL |
| 1 | KIT DE TELEFONIA AVAYA | AVAYA |
| 1 | LAPTOP DELL INSPIRON | DELL |
| 1 | DELL 23 MONITOR P2317H | DELL |
| 1 | DELL LATITUDE 3560 BTX | DELL |
| 1 | INSPIRON 15 3000 SERIES INTEL 3567 | DELL |
| 1 | DELL LATITUDE 3480 BTX | DELL |
| 1 | MULTIFUNCIONAL SAMSUNG | SAMSUNG |
| 1 | MULTIFUNCIONAL EPSON | EPSON |
| 1 | DELL LAPTOP INSPIRON 7348 | DELL |
| 1 | EQUIPO PARA TELEFONIA DIGITAL AVAYA | AVAYA |
| 1 | LAP DELL I5 MODELO 5567 | DELL |
| 1 | LAPTOP DELL 5567 | DELL |
| 1 | LAPTOP HP INTEEL CORE | HP |
| 1 | LAPTOP INTEL CORE | HP |
| 1 | LAPTOP HP | HP |
| 1 | LAPTOP HP | HP |
| 1 | MONITOR SAMSUNG 32" | SAMSUNG |
| 1 | MONITOR CURVO PARA PC 27 PULGADAS | SAMSUNG |
| 1 | HP PAVILION LAPTOP 15-cw1005la | HP |
| 1 | VOSTRO DT3471 | DELL |
| 1 | LAPTOP DELL INSPIRON 153505 | DELL |
| 1 | LAPTOP DELL INSPIRON 153505 (MTTO) | DELL |
| 1 | HP PAVILON 15.6" 11va Gen. COREi7 16g (MANUFACTURA) | HP |
| 1 | CPU Y MONITOR LENOVO | LENOVO |
| 1 | LAP ASUS VIVOBOOK CORE 15 8 GB 256 GB F-8684 (SISTEMAS) | ASUS |

| CANTIDAD | MAQUINARIA Y EQUIPO | MARCA |
|---|---|---|
| 4 | BANCOS DE TRABAJO | |
| 1 | RACKS P/A ALMACEN PARA BORDAS | |
| 1 | RACKS P/A ALMACEN | |
| 1 | SOPLETE ARCAIR | INFRA |
| 1 | MAQ HOTPOINT 437 | INFRA |
| 6 | ANDAMIO 98" | |
| 2 | ANDAMIO 48" MO.M | |
| 2 | CARRO DE TRANSPORTACION MO.M | |



| | | |
|---|---|---|
| 1 | CARRO PORTALAMINAS MO.M F.197,196 | KBA |
| 1 | CARRO  MO,M F | KBA |
| 2 | DADOS (MOLDE PARA BORDAS) | AURORA |
| 5 | ALIMENTADOR S 302 SERIE 929-16 | INFRA |
| 1 | DADO AURORA TMI | AURORA |
| 1 | DADO AURORA 100002 | AURORA |
| 1 | MAQ SOLDAR MI2-300 CA | INFRA |
| 1 | MAQ SOLDAR MI 250L CA | INFRA |
| 1 | MAQUINA DE SOLDAR MM215 | INFRA |
| 1 | COMPRESOR KAESER MOD AS-40 | KAESER |
| 1 | EXTINTOR  MOVIL CAP 70 KGS | |
| 3 | RACKS PTR AZUL | |
| 5 | MAQUINA DE SOLDAR CP 303 | INFRA |
| 1 | ANTORCHA PXM400354510 | INFRA |
| 8 | GABINETES PARA HERRAMIENTA | |
| 1 | COMPRESOR AIRTOWER | KAESER |
| 1 | TABLERO ELECTRONICO DE PRODUCCION | INELED |
| 1 | ALFA TIG 252 DP | INFRA |
| 1 | MAQUINA DE SOLDAR ARCTRON 205 | INFRA |
| 1 | CORTADORA PLASMA HOT POINT I45 | INFRA |
| 1 | ALCOHOLIMETRO ALCOMATE PREMIUM | ALCOMATE |
| 1 | S 302 T CODIGO 309-110 | INFRA |
| 1 | CP-303 CODIGO 302-472 | INFRA |
| 2 | SISTEMA DE HIDRANTES | PHILADELPHIA |
| 1 | VENTILADOR PISO 24" | |
| 1 | KAESER SECADOR JULIO 2018 | KAESER |
| 1 | MAQUINA DE SOLDAR ESAB SEPTIEMBRE 2018 | ESAB |
| 1 | LINEA DE PRODUCCIÓN | |
| 1 | MOLDE DE ALUMINIO ESTRIBO F-728 | MACETONIA |
| 1 | DESBROZADORA A GASOLINA DES-30R | TRUPER |
| 1 | TANQUE DE AIRE COMPRIMIDO KAESER  SERIE 18175 | KAESER |
| 2 | 2 DADOS PARA BORDAS ALYEX | AYEX |
| 1 | CUT MASTER MAQUINA DE CORTE | |
| 1 | SIERRA CINTA MEMSHARK281SXIEVO MODELO SHARK 281 | MEMSHARK |
| 1 | MOLDE PARA CORTAAVIENTOS INLAND | ROTOMAC |
| 1 | ESTRUCTURA DE ACERO PARA ESTACION 3 | |

| HERRAMIENTAS | | |
|---|---|---|
| CANTIDAD | | MARCA |
| 1 | CARRETILLA P LLANTAS OMEGA | OMEGA |
| 1 | PRENSA 50 TON ERCKO | ERCKO |
| 1 | PLASMA HOT POINT 750 MR | INFRA |
| 1 | MARTILLO DE GOLPE NEUMATICO | |
| 1 | SIERACINTA HORIZONTAL 110 | |
| 2 | REMACHADORA 2 PZAS AURORA OCTUBRE 2017 | ATD |
| 2 | MESA SOPORTE REMACHADORAS 2 PZS AURORA OCTU | ATD |
| 1 | APILADOR (PATIN) MCLANE | MCLANE |



| 1 | TORQUIMETRO ELEC 6207 250 FT | |
| 2 | HERRAMENTAL P/ARMADO DE 3 PANELES | |

| SOFTWARE | | |
| --- | --- | --- |
| CANTIDAD | | MARCA |
| 1 | IMPLEMENTACION SISTEMA PRIORITY | PRIORITY |



<u>Exhibit C</u>

**Raw Materials, Inventory and Work in Process**

[None]



Exhibit D

**Intellectual Property and Proprietary Rights**

**Patents, Trademarks and Commercial Slogans**

1. U.S. Utility Patent Application
   Title: Cargo Trailer Apparatus
   Serial No.: 17/165,111
   File: February 2, 2021

2. Certificado de Registro – IMPI
   Tipo: Registro de Aviso Comercial
   Denominación: EL SEMIRREMOLQUE MÁS LIGERO EN MÉXICO
   No. de Registro: 100945
   Fecha de Concesión: 27 de junio de 2017
   <u>Aviso Comercial:</u>

   EL SEMIRREMOLQUE MÁS LIGERO EN MÉXICO

3. Certificado de Registro – IMPI
   Tipo: Registro de Aviso Comercial
   Denominación: LA CAJA MÁS LIGERA DE MÉXICO
   No. de Registro: 100754
   Fecha de Concesión: 20 de junio de 2017
   <u>Aviso Comercial:</u>

   LA CAJA MÁS LIGERA DE MÉXICO

4. Certificado de Registro – IMPI
   Tipo: Registro de Aviso Comercial
   Denominación: LA CAJA MÁS LIGERA EN MÉXICO
   No. de Registro: 100944
   Fecha de Concesión: 27 de junio de 2017
   <u>Aviso Comercial:</u>

   LA CAJA MÁS LIGERA EN MÉXICO

5. Certificado de Solicitud de Marca -- IMPI
   Tipo de Solicitud: Registro de Marca
   No. de Expediente: 1829268
   Fecha de Presentación: 7 de diciembre de 2016
   <u>Marca:</u>




**11/16**

6. Certificado de Registro – IMPI
   Tipo: Registro de Marca
   Denominación: INLAND
   No. de Registro: 949818
   Fecha de Concesión: 29 de agosto de 2006
   <u>Marca:</u>





Exhibit E

**Permits, Approvals, Registrations, Licenses, Certifications or other Authorizations**

1. Authorization for the designation of a foreign manufacturer of a U.S. agent for service of process (49 C.F.R. Part 551, Subpart D) dated May 22, 2019, issued by the National Highway Traffic Safety Administration of the U.S. Department of Transportation, in favor of TMI Trailer Mechanic International, S.A. de C.V.

2. Software: AutoCAD Full
   No. Licenses: 1
   Term: October - 24

3. Software: Collection D&M
   No. Licenses: 1
   Term: September - 22



4. Software: Microsoft 365 para Negocios
   No. Licenses: 12
   Term: July - 22

Exhibit F

**Agreements and Commitments**

[Attached]



I.  **Purchase/Sale Orders from Clients**

| Order No. No. Pedido | Order No. No. Pedido | Client Cliente | Ft Pies | Units Unidades | VINES | Unit Price Precio Unitario | Total Amount Monto Total | Advance Payment Anticipo | Amount Owed Adeudo |
|---|---|---|---|---|---|---|---|---|---|
| TMI | INLAND | | | | | | | | |
| SO21000189 | SO22000001 | TSM | 53FT | 5 | 3T9S392N4NM180028 | $44,800.00 | $224,000.00 | $- | $224,000.00 |
| | | | | | 3T9S392N6NM180029 | | | | |
| | | | | | 3T9S392N2NM180030 | | | | |
| | | | | | 3T9S392N4NM180031 | | | | |
| | | | | | 3T9S392N6NM180032 | | | | |
| SO22000424 | SO22000036 | TSM | 53FT | 1 | 3T9S092N8NM180350 | $44,800.00 | $44,800.00 | $- | $44,800.00 |
| SO22000425 | SO22000037 | TSM | 53FT | 1 | 3T9S392N0NM180351 | $44,800.00 | $44,800.00 | $- | $44,800.00 |
| SO22000426 | SO22000038 | TSM | 53FT | 1 | 3T9S092N1NM180352 | $44,800.00 | $44,800.00 | $- | $44,800.00 |
| SO22000389 | SO22000026 | RANOF | 39FT | 1 | 3T9S092N7NM180405 | $36,000.00 | $36,000.00 | $18,000.00 | $18,000.00 |
| SO22000392 | SO22000027 | COMERCIAL FLETERA | 53FT | 1 | 3T9S892N8NM180406 | $40,100.00 | $40,100.00 | $20,800.00 | $19,300.00 |
| SO22000132 | SO22000009 | FLETES MEXICO CARGA EXPRESS | 53FT | 10 | 3T9S392NXNM180230 | $40,530.00 | $405,300.00 | $189,439.19 | $215,860.81 |
| | | | | | 3T9S392N1NM180231 | | | | |
| | | | | | 3T9S392N3NM180232 | | | | |
| | | | | | 3T9S392N5NM180233 | | | | |
| | | | | | 3T9S392N7NM180234 | | | | |
| | | | | | 3T9S392N9NM180235 | | | | |
| | | | | | 3T9S392N0NM180236 | | | | |
| | | | | | 3T9S392N2NM180237 | | | | |
| | | | | | 3T9S392N4NM180238 | | | | |
| | | | | | 3T9S392N6NM180239 | | | | |
| SO22000402 | SO22000028 | QUEST EXPRESS | 53FT | 3 | 3T9S372N6NM180407 | $42,400.00 | $127,200.00 | $65,100.00 | $62,100.00 |
| | | | | | 3T9S372N6NM180408 | | | | |
| | | | | | 3T9S372N6NM180409 | | | | |
| SO22000146 | SO22000011 | SUPERTRACK | 53FT | 30 | 3T9S392N2NM180240 | $36,300.00 | $1,089,000.0 | $498,477.00 | $590,523.00 |
| | | | | | 3T9S392N2NM180241 | | | | |
| | | | | | 3T9S392N2NM180242 | | | | |
| | | | | | 3T9S392N2NM180243 | | | | |
| | | | | | 3T9S392N2NM180244 | | | | |
| | | | | | 3T9S392N2NM180245 | | | | |
| | | | | | 3T9S392N2NM180246 | | | | |
| | | | | | 3T9S392N2NM180247 | | | | |
| | | | | | 3T9S392N2NM180248 | | | | |
| | | | | | 3T9S392N2NM180249 | | | | |
| | | | | | 3T9S392N2NM180250 | | | | |

| | | | | | 3T9S392N2NM180251 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 3T9S392N2NM180252 | | | | |
| | | | | | 3T9S392N2NM180253 | | | | |
| | | | | | 3T9S392N2NM180254 | | | | |
| | | | | | 3T9S392N4NM180255 | | | | |
| | | | | | 3T9S392N4NM180256 | | | | |
| | | | | | 3T9S392N4NM180257 | | | | |
| | | | | | 3T9S392N4NM180258 | | | | |
| | | | | | 3T9S392N4NM180259 | | | | |
| | | | | | 3T9S392N4NM180260 | | | | |
| | | | | | 3T9S392N4NM180261 | | | | |
| | | | | | 3T9S392N4NM180262 | | | | |
| | | | | | 3T9S392N4NM180263 | | | | |
| | | | | | 3T9S392N4NM180264 | | | | |
| | | | | | 3T9S392N4NM180265 | | | | |
| | | | | | 3T9S392N4NM180266 | | | | |
| | | | | | 3T9S392N4NM180267 | | | | |
| | | | | | 3T9S392N4NM180268 | | | | |
| | | | | | 3T9S392N4NM180269 | | | | |
| SO22000403 | SO22000029 | GEA GROUP | 53FT | 4 | 3T9S372N6NM180410 | $41,400.00 | $165,600.00 | $85,600.00 | $80,000.00 |
| | | | | | 3T9S372N6NM180411 | | | | |
| | | | | | 3T9S372N6NM180412 | | | | |
| | | | | | 3T9S372N6NM180413 | | | | |
| SO22000150 | SO22000012 | ISIDRO ESQUIVEL | 53FT | 10 | 3T9S392N8NM180198 | $43,000.00 | $430,000.00 | $221,000.00 | $209,000.00 |
| *Las primeras 5 ya fueron facturadas en TMI *The first 5 have already been invoiced by TMI | | | | | 3T9S392N8NM180199 | | | | |
| | | | | | 3T9S392N8NM180200 | | | | |
| | | | | | 3T9S392N8NM180201 | | | | |
| | | | | | 3T9S392N8NM180202 | | | | |
| SO22000404 | SO22000030 | CARDINAL LEASE | 53FT | 1 | 3T9S392N3NM180414 | $41,650.00 | $41,650.00 | $21,325.00 | $20,325.00 |
| SO22000405 | SO22000031 | VENSCO | 53FT | 1 | 3T9S392N0NM180415 | $42,400.00 | $42,400.00 | $42,092.34 | $307.66 |
| SO22000311 | SO22000020 | AUTOTRANSPORTES SAN JULIAN | 53FT | 5 | 3T9S392N0NM180415 | $43,800.00 | $219,000.00 | $85,000.00 | $134,000.00 |
| SO22000367 | SO22000023 | TEXAS ONE LOGISTIC | 53FT | 7 | 3T9S392N0NM180335 | $44,000.00 | $308,000.00 | -$84,850.00 | $392,850.00 |
| | | | | | 3T9S392N0NM180336 | | | | |
| | | | | | 3T9S392N0NM180337 | | | | |
| | | | | | 3T9S392N0NM180338 | | | | |
| | | | | | 3T9S392N0NM180339 | | | | |
| | | | | | 3T9S392N0NM180340 | | | | |
| | | | | | 3T9S392N0NM180341 | | | | |
| SO22000407 | SO22000032 | ALAMO CITY | 53FT | 10 | 3T9S372N7NM180416 | $44,320.00 | $443,200.00 | $- | $443,200.00 |
| | | | | | 3T9S372N9NM180417 | | | | |



| | | | | | 3T9S372N0NM180418 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 3T9S372N2NM180419 | | | | |
| | | | | | 3T9S372N9NM180420 | | | | |
| | | | | | 3T9S372N0NM180421 | | | | |
| | | | | | 3T9S372N2NM180422 | | | | |
| | | | | | 3T9S372N4NM180423 | | | | |
| | | | | | 3T9S372N6NM180424 | | | | |
| | | | | | 3T9S372N8NM180425 | | | | |
| SO22000408 | SO22000033 | ALAMO CITY | 53FT | 10 | 3T9S372NXNM180426 | $44,320.00 | $443,200.00 | $- | $443,200.00 |
| | | | | | 3T9S372N1NM180427 | | | | |
| | | | | | 3T9S372N3NM180428 | | | | |
| | | | | | 3T9S372N5NM180429 | | | | |
| | | | | | 3T9S372N1NM180430 | | | | |
| | | | | | 3T9S372N3NM180431 | | | | |
| | | | | | 3T9S372N5NM180432 | | | | |
| | | | | | 3T9S372N7NM180433 | | | | |
| | | | | | 3T9S372N9NM180434 | | | | |
| | | | | | 3T9S372N0NM180435 | | | | |
| SO22000409 | SO22000034 | ALAMO CITY | 53FT | 10 | 3T9S372N2NM180436 | $44,320.00 | $443,200.00 | $- | $443,200.00 |
| | | | | | 3T9S372N4NM180437 | | | | |
| | | | | | 3T9S372N6NM180438 | | | | |
| | | | | | 3T9S372N8NM180439 | | | | |
| | | | | | 3T9S372N4NM180440 | | | | |
| | | | | | 3T9S372N6NM180441 | | | | |
| | | | | | 3T9S372N8NM180442 | | | | |
| | | | | | 3T9S372NXNM180443 | | | | |
| | | | | | 3T9S372N1NM180444 | | | | |
| | | | | | 3T9S372N3NM180445 | | | | |
| SO22000361 | SO22000021 | TERMINAL LOGISTIC | 53FT | 10 | 3T9S392N7NM180315 | $38,500.00 | $385,000.00 | $- | $385,000.00 |
| | | | | | 3T9S392N7NM180316 | | | | |
| | | | | | 3T9S392N7NM180317 | | | | |
| | | | | | 3T9S392N7NM180318 | | | | |
| | | | | | 3T9S392N7NM180319 | | | | |
| | | | | | 3T9S392N7NM180320 | | | | |
| | | | | | 3T9S392N7NM180321 | | | | |
| | | | | | 3T9S392N7NM180322 | | | | |
| | | | | | 3T9S392N7NM180323 | | | | |
| | | | | | 3T9S392N7NM180324 | | | | |
| SO22000293 | SO22000018 | JAIME ALMANZA MOSQUEDA | 53FT | 8 | 3T9S392N4NM180355 | $44,000.00 | $352,000.00 | $- | $352,000.00 |
| | | | | | 3T9S392N4NM180356 | | | | |
| | | | | | 3T9S392N4NM180357 | | | | |



| | | | | | 3T9S392N4NM180358 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 3T9S392N4NM180359 | | | | |
| | | | | | 3T9S392N4NM180360 | | | | |
| | | | | | 3T9S392N4NM180361 | | | | |
| | | | | | 3T9S392N4NM180362 | | | | |
| SO22000239 | SO22000013 | R&L | 28FT | 1 | 3T9S231M6NM180217 | $34,600.00 | $34,600.00 | $- | $34,600.00 |
| SO22000268 | SO22000017 | R&L | 53FT | 1 | 3T9S372M5NM180471 | $45,450.00 | $45,450.00 | $- | $45,450.00 |
| SO22000365 | SO22000022 | SALZILLO | 53FT | 10 | 3T9S392N4NM180305 | $45,400.00 | $454,000.00 | $- | $454,000.00 |
| | | | | | 3T9S392N4NM180306 | | | | |
| | | | | | 3T9S392N4NM180307 | | | | |
| | | | | | 3T9S392N4NM180308 | | | | |
| | | | | | 3T9S392N4NM180309 | | | | |
| | | | | | 3T9S392N4NM180310 | | | | |
| | | | | | 3T9S392N4NM180311 | | | | |
| | | | | | 3T9S392N4NM180312 | | | | |
| | | | | | 3T9S392N4NM180313 | | | | |
| | | | | | 3T9S392N4NM180314 | | | | |
| SO22000387 | SO22000025 | TRANSPORTES ESCOBEDO | 53FT | 2 | 3T9S392N6NM180404 | $42,500.00 | $85,000.00 | | $85,000.00 |
| | | | | | 3T9S392N6NM180405 | | | | |
| SO21001491 | SO22000008 | RJFORC INC | 53FT | 2 | 3T9S372N3NM180221 | $36,800.00 | $73,600.00 | $16,850.00 | $56,750.00 |
| | | | | | 3T9S372N3NM180222 | | | | |
| | | RJFORC INC | 53FT | 1 | 3T9S372N3NM180223 | $39,900.00 | $39,900.00 | $39,900.00 | $39,900.00 |
| SO22000386 | SO22000024 | TBM CARRIERS | 53FT | 7 | NO HAY VINES | $44,500.00 | $311,500.00 | $- | $311,500.00 |

II.   **Purchase/Sale Orders from Suppliers**



All assignable contracts, agreements and commitments in effect as of March 1, 2022, including, supply agreements, purchase orders and/or sale orders, related to the manufacturing, assembling, repairing and/or selling business of industrial trailers and semi-trailers, entered by TMI with its suppliers and/or venderos of good and/or services.

Exhibit G

**Miscellaneous Assets**

[None]



Exhibit H

**Excluded Assets**

[Attached]



I.   **Fixed Assets**

| MOBILIARIO Y EQUIPO DE OFICINA |
| --- |
| ESCRITORIO 1.20 C/UN PED/LINEA F.51711 12/ |
| TELEFONO SATELITAL |
| MESA ESQUINERA Y CUBIERTAS 90X60 |
| MESA ESQUINERA  Y 2 CUBIERTAS |
| SILLA OPERATIVA PM STEEL  3  REFACC 7 PRODUCC |
| ESCRITORIO OPERATIVO |
| 2 TV SAMSUNG JUNIO 2018 |
| FRIGOBAR |
| AMPLIFICADOR INTEGRA |
| CONCENTRADOR DE OXIGENO SYMED 5LT SYS-M50-US |
| PULVERIZADOR PW35 NEBULIZADOR ULV F-BOF158 |
| 4 MESAS DE TRABAJO C/PEDESTAL VENTAS 3 REFACC Y 1 PROD |

| EQUIPO DE TRANSPORTE |
| --- |
| MONTACARGAS |
| REMOLQUE |
| SEMIRREMOLQUE 53 FT INLAND |
| SPRINTER CARGO VAN MERCEDES BENZ |
| CAMION TORTON KENWORTH T370 MODELO 2015 |
| CAMION TORTON KENWORTH T370 MODELO 2015 VALOR COMERCIAL |
| SEMIRREMOLQUE 40 FT INLAND MOD 2019 |
| KENWORTH T660, MODELO 2012 |
| VOLKSWAGEN VENTO 2015 ACTIVE 5P L4 1.6L TDI ABS BA R15  AC  STD, MODELO 2015 |
| VENTO ACTIVE STD 2015 |
| VENTO ACTIVE STD 2015 |
| VENTO COMFORTLINE  SERIE MEX5H2603GT047282 |
| VOLKSWAGEN JETTA A6 GLI 2.0L VP TC.STD, MODELO 2017 |
| VOLKSWAGEN VENTO CONFORTLINE 4P L41.6L FWD ABS AC R15 STD, MODELO 2017 |
| VENTO COMFORTLINE 1.6 L 5 VEL |
| VENTO ACTIVE STD |

| EQUIPO DE COMPUTO |
| --- |
| VOSTRO 3550 IVAN |
| DELL INSPIRON 3467 BIANCA |
| 2 MONITORES |
| MULTIFUNCIONAL CANON MF227DW 16/AGO/2016 |
| IMPRESORA ZEBRA GC420T 27/OCTUBRE/2016 |
| LAPDELL3 AGOSTO 2017 BRENDA |
| 1 LAPTOP HP OFFICE MAX SEPTIEMBRE 2018 VSALINAS |
| SAMSUNG MONITOR GAMING 24" SERE SR35 VSALINAS |
| LAPTOP HP  06/2020  (JOSE) |
| LAPTOP DELL INSPIRON 153505 (DANIEL) |



| LAPTOP DELL INSPIRON 153505 (OMAR) |
|---|
| LAPTOP DELL INSPIRON 153505 (CARLOS) |
| LAPTOP DELL INSPIRON 153505 (MIGUEL) |

| MAQUINARIA Y EQUIPO |
|---|
| SISTEMA SOLAR INTERCONECTADO |
| KIT FLEJE DE ACERO |
| RACKS |

| CONTENEDORES SPACE-IT |
|---|
| SPACE-IT92085 |
| SPACE-IT172078 |
| SPACE-IT172079 |
| SPACE-IT172080 |
| SPACE-IT172081 |
| SPACE-IT172083 |
| SPACE-IT172084 |
| SPACE-IT172087 |
| SPACE-IT172088 |
| SPACE-IT172089 |
| SPACE-IT172090 |
| SPACE-IT172100 |
| SPACE-IT172101 |
| SPACE-IT172102 |
| SPACE-IT172103 |
| SPACE-IT172104 |
| SPACE-IT172105 |
| SPACE-IT172106 |
| SPACE-IT172107 |

II. **Trademarks and Commercial Slogans**

1. Certificado de Registro – IMPI
   Tipo: Registro de Marca
   Denominación: TMI STORE
   No. de Registro: 1713102
   Fecha de Concesión: 19 de enero de 2017
   Marca:





2. Certificado de Registro – IMPI
   Tipo: Registro de Marca

Denominación: TMI
No. de Registro: 1723960
Fecha de Concesión: 21 de febrero de 2017
Marca:



3. Certificado de Solicitud de Marca – IMPI
   Tipo de Solicitud: Registro de Marca
   Denominación: TMI
   No. de Expediente: 1667986
   Fecha de Inicio de Uso: 1 de febrero de 2011
   Marca:



4. Certificado de Registro – IMPI
   Tipo: Registro de Marca
   Denominación: SPACE IT
   No. de Registro: 2156979
   Fecha de Concesión: 13 de octubre de 2020
   Marca:







5. Certificado de Registro – IMPI
   Tipo: Registro de Marca
   Denominación: COOLED DIVISION
   No. de Registro: 1764646
   Fecha de Concesión: 19 de junio de 2017
   Marca:



6. Certificado de Registro – IMPI
   Tipo: Registro de Aviso Comercial

Denominación: LA CAJA QUE MUEVE TU NEGOCIO
No. de Registro: 100943
Fecha de Concesión: 27 de junio de 2017
<u>Aviso Comercial:</u>

LA CAJA QUE MUEVE TU NEGOCIO

III.     **Contracts related to Space-It Business**

All contracts, agreements and commitments, including, supply agreements, purchase orders, sale orders and account receivables related to space-it and aftermarket products and services owned or otherwise controlled by TMI.

IV.     **Cash and Bank Accounts**

Cash, bonds, securities and all bank and investment accounts in Mexico and/or abroad hold by TMI and/or any other related parties, except for the bank accounts opened in Mexico by the Company and Inland Trailer Land, S. de R.L. de C.V.

V.     **Account Receivables**

All account receivables in favor of TMI and/or any other related parties for any goods and services supplied and/or rendered in connection with the Business prior to March 1, 2022. The Members and the Company will further discuss and agree on how to handle account receivables associated with work in process initiated prior to March 1, 2022. Notwithstanding the foregoing or anything else to the contrary, all deposits and advance payments held o received by TMI prior to March 1, 2022, for Trailers or other products or services related to the Business will be retained by TMI and, therefore, will be considered Excluded Assets.

VI.     **Inventory**

All the inventory related to the Business, which will be transferred on or after the Effective Date by TMI or any third party to the Company, including the inventory sold or to be sold under the Asset Purchase Agreement between TMI and the Company dated March 1, 2022.

VII.     **Other Assets**



All other Assets which on or prior to the Effective Date have already been transferred by TMI or any third party to the Company or Inland Trailer Land, S. de R.L. de C.V.